IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JORDAN CURRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-01224-STA-jay |
| | ) | |
| SHAWN PHILLIPS, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Jordan Curry has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons that follow, the Petition is **DENIED**.[1]

**BACKGROUND**

In 2012, a Madison County, Tennessee, grand jury charged Curry with two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, one count of employing a firearm during the commission of a dangerous felony, and one count of evading arrest. (ECF No. 8-1 at 24-33.) His co-defendants, Grico Clark and Deangelo White, were similarly charged, except that "White was also charged with one count of possession of more than one-ounce of marijuana with intent to sell and one count of possession of one-half ounce of marijuana with intent to deliver." *State v. Clark, et al.*, No. W2012-02666-CCA-R3CD,

---

[1] The Clerk is **DIRECTED** to substitute Shawn Phillips for Michael Parris as Respondent. *See* Fed. R. Civ. P. 25(d).

2014 WL 505501, at *1 (Tenn. Crim. App. Feb. 7, 2014), *perm. to appeal denied* (Tenn June 20, 2014) ("*Curry I*"). The defendants were tried together. *Id.* at *1.

At the jury trial, the victims, Shannell Henning and Leon Jackson, testified that the defendants accosted them around 2:00 a.m. on July 11, 2011, as they were making their way to Henning's apartment in Jackson, Tennessee. *Id.* at *1. "[A]t least two of [the men] were armed," and "[o]ne of the[m] informed Ms. Henning and Mr. Jackson at gunpoint that they were being robbed." *Id.* They "ordered the victims to walk toward their apartment or they would be killed." *Id.* Once inside the apartment, the men "ordered Ms. Henning to sit on the floor" and they took "Mr. Jackson . . . to the kitchen where [they] took his money, and Curry restrained him by duct-taping him to the kitchen chair." *Id.* at *2. When "Curry stated he would kill Ms. Henning," she "felt the need to formulate some type of plan to get out of the apartment to safety." *Id.* She convinced White and Clark that she had more money "down the street in another apartment." *Id.* White and Clark then "took Ms. Henning out of her apartment at gunpoint, escorting her to her car." *Id.* Henning was held at gunpoint during the five minutes it took for her to drive to the other apartment. *Id.* "When they arrived at the apartment, White and Clark gave Ms. Henning five minutes to go inside and return with money or they would 'shoot up' the apartment." *Id.* Once inside, "she immediately called the police." *Id.* "Both White and Clark were eventually apprehended by police after a foot chase." *Id.* "White was found with about twenty-five grams of marijuana in his pocket." *Id.*

During the time that Clark, White, and Henning were en route to the other apartment, Curry "continued to search for money and when he found none, he hit Mr. Jackson in the head." *Id.* After receiving a phone call, he attempted to escape the vicinity, but was captured by the police.

2

*Id.* The police found that Curry "was armed with an assault rifle, complete with a clip containing extra rounds," and that he "was wearing latex gloves and had about $550 in cash and Ms. Henning's EBT card in his possession." *Id.* The police found "Jackson . . . duct-taped to a chair inside the apartment." *Id.*

The defendants were convicted of two counts each of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of evading arrest. *Id.* at *3. Curry and Clark were also convicted of one count each of employing a firearm during the commission of a dangerous felony. *Id.* The jury found White "not guilty of the firearm charge," and "convicted [him] of simple possession of marijuana." *Id.*

Curry and Clark each received "a total effective sentence of forty-four years," and White "a total effective sentence of twenty years." *Id.* The direct appeals were consolidated, and the Tennessee Court of Criminal Appeals affirmed the judgments. *Id.* at *1, 11.

Curry filed a *pro se* post-conviction petition in state court (ECF No. 8-16 at 3-18), which was amended by appointed counsel (*id.* at 27-31). Following an evidentiary hearing, the post-conviction trial court denied relief (*id.* at 46-47), and the TCCA affirmed, *Curry v. State*, No. W201500709CCAR3PC, 2015 WL 9259961, at *1 (Tenn. Crim. App. Dec. 17, 2015), *perm. to appeal denied* (Tenn. Apr. 7, 2016) ("*Curry II*").

## DISCUSSION

In August 2016, Curry filed his Petition (ECF No. 1) and a supporting memorandum (ECF No. 1-1). He asserts that the evidence was insufficient to convict him of aggravated robbery and aggravated kidnapping (Claim 1), that his trial counsel was ineffective by failing to file a motion to sever his case from that of his co-defendants (Claim 2), and that the State should have been

3

required to elect offenses.[2] (ECF No. 1 at 5, 7, 8.) Respondent, Shawn Phillips, filed the state-court record (ECF No. 8) and his Answer (ECF No. 9) to the Petition, to which Curry filed a Reply (ECF No. 12). Respondent argues that Claims 1 and 2 are without merit, and that Claim 3 is not properly before the Court. Curry maintains that all of his claims should be addressed in this federal habeas proceeding, and that all have merit.

I. **Legal Standards**

A. **Habeas Review and Procedural Default**

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts

---

[2] The Court has renumbered the claims.

4

facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available

5

remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

### B. Insufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to

sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II. Claim 1

Petitioner asserts that the evidence was insufficient to establish that he committed aggravated kidnapping. He argues, specifically, that the restraints on the victims did not exceed what was necessary to accomplish the aggravated robberies. He raised the issue on direct appeal (*see* ECF No. 8-12 at 2, 20-22), but the state appellate court rejected it, *see Curry I*, 2014 WL 505501, at *7. Respondent argues that Curry is not entitled to relief on his evidence-sufficiency claim because the state court's decision meets the AEDPA's deferential standards. The Court agrees.

"Robbery is the 'intentional or knowing theft of property from the person of another by violence or putting the person in fear.'" *Id.* at *6 (quoting Tenn. Code Ann. § 39–13–401(a)). Aggravated robbery occurs "either when the victim is seriously injured or when the defendant

9

'display[s] ... any article used ... to lead the victim to reasonably believe it to be a deadly weapon.'" *Id.* (quoting Tenn. Code Ann. § 39–13–402(a)) (alterations in original).

A person commits especially aggravated kidnapping when he "knowing[ly] and unlawful[ly] remov[es] or confine[s] . . . another 'so as to interfere substantially with the other's liberty,'" and does so "with a deadly weapon." *Id.* (quoting Tenn. Code Ann. §§ 39–13–302, –305). The element of substantial interference with liberty is met only where "the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *State v. White,* 362 S.W.3d 559, 578 (Tenn. 2012). The issue is one for the jury, *id.* at 579, which should be instructed to consider "the following factors:

- the nature and duration of the victim's removal or confinement by the defendant;

- whether the removal or confinement occurred during the commission of the separate offense;

- whether the interference with the victim's liberty was inherent in the nature of the separate offense;

- whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

- whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

- whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

*Id.* at 580–81.

On direct appeal, the Tennessee Court of Criminal Appeals set forth *Jackson*'s evidence-sufficiency standards, discussed the proofs required to convict Curry of the robbery and kidnapping offenses, and reviewed the evidence. *Curry I*, 2014 WL 505501, at *3-7. The court found that "[t]he proof at trial, when taken in a light most favorable to the State, showed that

after being approached by the armed men in the parking lot, the victims were taken to Ms. Henning's apartment and held at gunpoint for nearly fifteen minutes while Clark, White, and Curry ransacked the apartment looking for money. The proof further established that Ms. Henning continued to be held against her will, at gunpoint, while Clark and White accompanied her to another apartment in hopes of stealing more money. As Ms. Henning was taken away, Mr. Jackson was duct-taped to a chair in the kitchen of Ms. Henning's apartment and held at gunpoint by Curry. Throughout the ordeal, both victims were threatened with death if they did not cooperate with the perpetrators.

*Id.* at *6.

Based on this record, "and the fact that the trial court properly instructed the jury [on] the factors set forth in *White*," the court held that "there was ample evidence with which the jury could determine that the victims were prevented from summoning help on the basis of their restraint by" the defendants. *Id.* at *7. The court also found that "the restraint of the victims, both by gunpoint and duct tape, reduced the risk that [the defendants] would be detected and greatly increased the risk of harm to the victims." *Id.* The court therefore concluded that the jury's ultimate determination "that the restraint of the victims was not incidental to the kidnapping, but was actually a separate crime" was "within the province of the jury" and was supported by sufficient evidence. *Id.*

As noted, the Tennessee Court of Criminal Appeals correctly identified *Jackson*'s evidence-sufficiency standards and applied them to the facts of Petitioner's case. Curry thus has not shown that the appellate court's evidence-sufficiency determination is "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Petitioner has also failed to establish that the appellate court's conclusions, and the factual determinations on which they are based, are unreasonable. First of all, he does not identify any

clear and convincing evidence to undermine the court's factual findings as to the types of restraints placed on the victims and the way in which the events unfolded. Secondly, as the appellate court reasonably held, those facts give rise to reasonable inferences that the restraints greatly increased the risk of harm to the victims and prevented them from summoning help, and also reduced the risk that the defendants would be detected.

Petitioner argues that the state court's evidence-sufficiency determination is not reasonable because "the removal or confinement [of Shannell Henning] did not prevent [her] from summoning assistance" or "reduce the risk of detection" since "Henning was allowed to enter the apartment on her free will and call the police." (ECF No. 1-1 at 9.) He also argues that "[t]he removal or confinement" of Henning and Jackson "did not create a significant danger or increase the victims['] risk of harm" because "Henning was allowed to enter the apartment on her free will and call the police and . . . Jackson was able to free himself from the duct tape once the Petitioner ran from the apartment." (*Id.*) The argument is without merit.

Curry essentially posits that the state appellate court's decision is unreasonable because the evidence may have supported competing inferences as to whether the victims' removal or confinement exceeded that which was necessary to accomplish the robberies. The jury, however, was tasked with resolving all competing inferences arising from the evidence, *see White*, 362 S.W.3d at 579, and it did so in the State's favor. Consistent with *Jackson*'s commands, the Tennessee Court of Criminal Appeals gave "full play" to the jury's decision. *Jackson*, 443 U.S. at 319. The state appellate court's determination that the evidence was sufficient to sustain the convictions is, therefore, not an unreasonable application of *Jackson*'s standards.

Claim 1 is **DENIED**.

### III. Claim 2

Petitioner asserts that trial counsel rendered ineffective assistance by failing to file a motion to sever his case from that of his co-defendants, pursuant to Tennessee Rule of Criminal Procedure 14(c)(2)(B). (ECF No. 1 at 8; ECF No. 1-1 at 14.) He raised the claim on appeal from the denial of post-conviction relief, arguing that severance was necessary for the jury's "fair determination of [his] guilt or innocence . . . with regard to the charges relating to the female victim." (ECF No. 8-19 at 13.) Specifically, he maintained that severance would have kept the jury from imputing to him the evidence regarding the female victim's removal to another location by his co-defendants. (ECF No. 8-19 at 12-13.) The Tennessee Court of Criminal appeals affirmed the lower court's determination that counsel was not ineffective in deciding not to file a severance motion. *See Curry II*, 2015 WL 9259961, at *7-8. Petitioner now contends that the state appellate court's rejection of the claim does not survive AEDPA review. The argument is rejected.

Rule 14 of the Tennessee Rules of Criminal Procedure addresses the "[s]everance of [d]efendants" where "an out-of-court statement of a codefendant makes reference to the defendant but is not admissible against the defendant." Tenn. R. Crim. P. 14(c)(1). In that circumstance, "the prosecuting attorney" has several options, including proceeding with "a joint trial at which the statement is not admitted into evidence," or "the severance of the moving defendant." *Id.* The Rule also provides that "[t]he court shall grant a severance of defendants if . . . severance [is] necessary to achieve a fair determination of the guilt or innocence of one or more defendants." Tenn. R. Crim. P. 14(c)(2)(B).

Petitioner testified at the post-conviction hearing "that he discussed a motion to sever with his first attorney but that he did not discuss it with trial counsel because codefendant White filed a

13

similar motion, and it was denied." *Curry II*, 2015 WL 9249961, at *3. Counsel testified that co-defendant White's motion to sever was based on the fact that the prosecution's proof included the out-of-court statements of the co-defendants. (ECF No. 8-17 at 43-44.) He explained that, although he did not file a motion to sever, he did secure an agreement with the State to exclude certain statements made by Curry's co-defendants. (*Id.* at 48.) He also "said he felt another motion to sever would have been repetitive of the codefendant's motion and would have been denied, but he did not remember whether he discussed it with the Petitioner." *Curry II*, 2015 WL 9249961, at *4. He acknowledged that he did not file a motion to sever based on the argument that severance would be necessary to achieve a fair determination of his client's guilt or innocence in regards to the actions taken toward the female victim. (ECF No. 8-17 at 44.) He explained, however, that severance would not have "eliminate[d] any count of the indictment," as "[t]he evidence would have been the same" and the jury would have been instructed on facilitation and criminal responsibility. (*Id.* at 47-48.)

The post-conviction trial court held that counsel did not render ineffective assistance by failing to file a motion for severance. (ECF No. 8-16 at 47.) There was, the court determined, "no factual or legal" basis for such a motion. (*Id.*) The court also found that Petitioner was not prejudiced by counsel's conduct because the court "would have been obligated to give instructions on facilitation and criminal responsibility for the conduct of another" had Petitioner been tried separately. (*Id.*) On appeal, the Tennessee Court of Criminal Appeals concurred in the lower court's analysis. *Curry II*, 2015 WL 9259961, at *7-8. It concluded that "[c]ounsel made a tactical decision not file the motion because there was no legal basis to sever the trial." *Id.* at *7. The court further held that Petitioner was not prejudiced by counsel's conduct because "the State would

have presented identical evidence against [him] in a separate trial and . . . no count of the indictment would have been dismissed as a result of the severance." *Id.* at *8.

As noted, the Tennessee Court of Criminal Appeals correctly identified *Strickland*'s standards and applied them to the facts of Petitioner's case. Its ineffective-assistance determination is thus not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406.

Nor is the decision based on unreasonable factual determinations. Petitioner has not challenged specific findings of fact, or pointed to clear and convincing evidence which would suggest that the state courts' findings are not supported by the record.

The decision of the Tennessee Court of Criminal Appeals is also not based on an unreasonable application of *Strickland*'s prejudice standard to the facts.[3] *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."). Because a separate trial would have involved the same evidence as presented at the joint trial, and because the jury would have been instructed on facilitation and criminal responsibility, the appellate court's determination that Petitioner suffered no prejudice is not unreasonable.

Claim 2 is **DENIED**.

IV. **Claim 3**

---

[3] With regard to *Strickland*'s deficient performance prong, counsel's testimony suggests that his decision to refrain from filing a severance motion on the basis that it would advance the fair determination of his client's guilt or innocence may have been misinformed. When asked why he did not file such a motion, he responded "I felt it was just—it would be a repeat of Mr. White's motion and it would be denied." (ECF No. 8-17 at 44.) The post-conviction transcript shows, however, that White's severance motion was based only on the out-of-court statements of the co-defendants. (*See id.* at 43-44.)

Petitioner asserts that the prosecution should have been required to elect offenses so that the jury could "establish which evidence went with each act in order to make a unanimous decision." (ECF No. 1 at 7.) He posits that the prosecution's failure to elect offenses resulted in "duplicity, lack of jury unanimity and double jeopardy." (ECF No. 1-1 at 10.) The claim in its entirety must be dismissed.

In his direct appeal, Petitioner argued that the failure of the State to elect offenses resulted in "duplicity and lack of jury unanimity," in violation of state law. (ECF No. 8-12 at 23.) The Tennessee Court of Criminal Appeals rejected the argument, finding that state law did not require an election of offenses. *Curry I*, 2014 WL 505501, at *8. Relying on Tennessee Supreme Court case law, the appellate court held "that the State is not required to make an election of offenses when the crime at issue is considered a single, continuous course of conduct." *Id.* (citing *State v. Adams*, 24 S.W.3d 289, 294-95 (Tenn. 2000)). The court found that no election on the kidnapping charges was required because "kidnapping is a continuous course of conduct." *Id.* (citing *State v. Legg*, 9 S.W.3d 111, 118 (Tenn. 1999)). "Moreover, as to the aggravated robbery counts," the court found that the State was not required to make an election of offenses because "[t]he robberies of each victim were clearly distinct acts." *Id.*

Petitioner's first sub-claim under Claim 3—*i.e.*, that the avoidance of "duplicity" required an election of offenses—is not subject to review in this habeas proceeding. In the Sixth Circuit, a federal "indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Gandy*, No. 17-2020, 926 F.3d 248, 2019 WL 2400983, at *9 (6th Cir. June 7, 2019) (quoting *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007)). "[T]he primary concern [with a duplicitous indictment] is that a defendant may be deprived of his right to a unanimous jury

16

verdict." *Id.* (alterations in original) (quoting *Kakos*, 483 F. 3d at 443). The Sixth Circuit's rule against duplicitous pleading in federal cases is not a basis for relief under § 2254 because it is not premised on clearly established United States Supreme Court law made applicable to the states. Curry has not cited to a Supreme Court decision clearly establishing such a rule, and this Court has not found one. *See Covarrubias v. Gower*, No. 13-CV-04611-EMC, 2016 WL 1569972, at *22 (N.D. Cal. Apr. 19, 2016) ("The U.S. Supreme Court has never held that an indictment is deficient under the federal constitution merely because it contains a duplicitous count.")

Even if Petitioner's duplicity sum-claim raised an issue of federal law applicable to the states, it is procedurally defaulted. The sole sentence in Petitioner's direct appeal brief relating to duplicity reads: "The Defendant Curry submits that there was evidence presented to the jury of multiple acts that could have been construed as being committed by him and this proof could have resulted in duplicity and lack of jury unanimity." (ECF No. 8-12 at 23.) No elaboration on the issue is made, and the brief does not cite to federal law on the subject. Accordingly, Petitioner did not fairy present the issue as a federal law claim to the state appellate court. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (state habeas petitioner did not "fairly present" a federal claim to the state court where nothing in his state-court submission "alerted the court to the alleged federal nature of the claim"). Since he has not alleged cause and prejudice to excuse the procedural default, or that he is actually innocent of the offenses, the sub-claim is not subject to federal habeas review.

Insofar as the election-of-offenses claim is premised on Petitioner's right under the Tennessee constitution to a unanimous jury verdict, it is not cognizable in this federal proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (federal habeas corpus relief is not available "for errors of state law.") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). To the extent Petitioner

17

insists that he has a *federal* right to juror unanimity, he is incorrect. The Supreme Court has repeatedly held that state criminal defendants have no federal constitutional right to a unanimous jury verdict. *See Schad v. Arizona,* 501 U.S. 624, 630–32 (1991) (plurality opinion) (declining to hold that Sixth, Eighth, or Fourteenth Amendments require unanimous jury in state capital cases); *Apodaca v. Oregon,* 406 U.S. 404, 406–14 (1972) (a unanimous jury verdict in state criminal prosecutions is not required by the Sixth and Fourteenth Amendments); *Johnson v. Louisiana,* 406 U.S. 356, 359–63 (1972) (rejecting a due process challenge to non-unanimous state jury verdict). Accordingly, the jury unanimity sub-claim is non-cognizable. *See e.g.*, *Smith v. Sherry*, No. 08-CV-12184, 2011 WL 3440101, at *13 (E.D. Mich. Aug. 8, 2011) (dismissing petitioner's jury unanimity claim as "not cognizable" because "there is no federal constitutional right to a unanimous verdict in a [state] criminal case.") (citing *Apodaca,* 406 U.S. at 406)).

Petitioner's final election-of-offenses sub-claim is procedurally defaulted. The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The prohibition ... protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense." *United States v. DeCarlo*, 434 F.3d 447, 454 (6th Cir. 2006) (citing *Witte v. United States*, 515 U.S. 389, 391 (1995)). In his direct appeal, Petitioner did not argue, as he does now, that the prosecution's failure to elect offenses violated the Double Jeopardy Clause. (*See* ECF No. 8-12 at 23-25.) Because the time for presenting that argument to the state courts has passed, the sub-claim is procedurally defaulted. Petitioner has not alleged cause or prejudice to excuse the default, and has not identified any new, reliable evidence of his actual innocence.

Accordingly, as Claim 3 in its entirety is not properly before this Court, it is **DISMISSED**.

For all of these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

19

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[4]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 27, 2019.

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.